No. 26-1349

# In the United States Court of Appeals for the Seventh Circuit

FACULTY, ALUMNI, AND STUDENTS OPPOSED TO RACIAL PREFERENCES,

*Plaintiff-Appellant*,

v.

NORTHWESTERN UNIVERSITY, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Illinois,
Case No. 1:25-cv-01129
The Honorable Sara L. Ellis

## BRIEF OF DEFENDANT-APPELLEE NORTHWESTERN UNIVERSITY


Christine C. Smith
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Danielle Conley
Jude Volek
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Suite 700
Washington, DC 20004
(202) 240-2945

**Admitted in Washington DC, only.*

Samir Deger-Sen
*Counsel of Record*
Norah Rast*
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
samir.deger-sen@lw.com

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700


July 1, 2026


*Counsel for Defendant-Appellee*
*Northwestern University*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1349

Short Caption: FASORP v. Northwestern University, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Northwestern University

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Dunn Isaacson Rhee LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Samir Deger-Sen Date: 7/1/2026

Attorney's Printed Name: Samir Deger-Sen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** X **No** __

Address: Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020

Phone Number: (212) 906-1200 Fax Number: (212) 751-4864

E-Mail Address: samir.deger-sen@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1349

Short Caption: FASORP v. Northwestern University, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Northwestern University

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Dunn Isaacson Rhee LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Sean M. Berkowitz Date: 7/1/2026

Attorney's Printed Name: Sean M. Berkowitz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** __ **No** X

Address: Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700 Fax Number: (312) 993-9767

E-Mail Address: sean.berkowitz@lw.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1349

Short Caption: FASORP v. Northwestern University, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Northwestern University

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Dunn Isaacson Rhee LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Christine C. Smith Date: 7/1/2026

Attorney's Printed Name: Christine C. Smith

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** __ **No** X

Address: Latham & Watkins LLP, 555 Eleventh Street, Suite 1000, Washington, DC 20004

Phone Number: (202) 637-2200 Fax Number: (202) 637-2201

E-Mail Address: christine.smith@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1349

Short Caption: FASORP v. Northwestern University, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Northwestern University

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Dunn Isaacson Rhee LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Norah Rast Date: 7/1/2026

Attorney's Printed Name: Norah Rast

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** __ **No** X

Address: Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020

Phone Number: (212) 906-1200 Fax Number: (212) 751-4864

E-Mail Address: norah.rast@lw.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1349

Short Caption: FASORP v. Northwestern University, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Northwestern University

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Dunn Isaacson Rhee LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Danielle Conley Date: 7/1/2026

Attorney's Printed Name: Danielle Conley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** __ **No** X

Address: Dunn Isaacson Rhee LLP, 401 9th Street, NW, Washington, DC 20004

Phone Number: (202) 240-2945 Fax Number: N/A

E-Mail Address: dconley@dirllp.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1349

Short Caption: FASORP v. Northwestern University, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Northwestern University

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP, Dunn Isaacson Rhee LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Jude Volek Date: 7/1/2026

Attorney's Printed Name: Jude Volek

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** __ **No** X

Address: Dunn Isaacson Rhee LLP, 401 9th Street, NW, Washington, DC 20004

Phone Number: (202) 240-2944 Fax Number: N/A

E-Mail Address: jvolek@dirllp.com

## TABLE OF CONTENTS

**Page**


APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ii

TABLE OF AUTHORITIES ix

JURISDICTIONAL STATEMENT 1

STATEMENT OF THE ISSUES 2

INTRODUCTION 2

STATEMENT OF THE CASE 5

I. FACTUAL BACKGROUND 5

A. FASORP And Its History of Unsuccessful, Harassing Litigation 5

B. FASORP's Allegations Regarding Faculty Hiring 7

C. FASORP's Allegations Regarding Member, Editor, and Article Selection At The Law Review 9

II. PROCEDURAL BACKGROUND 10

A. FASORP's Bad Faith Procedural Maneuver 10

B. Orders On Appeal 12

SUMMARY OF ARGUMENT 14

ARGUMENT 17

I. The District Court Correctly Dismissed FASORP's Hiring Claims 17

A. FASORP Lacks Standing To Challenge Northwestern's Hiring 17

1. FASORP Lacks Standing To Challenge Entry-Level Hiring 20

2. FASORP Lacks Standing To Challenge Lateral Hiring 22

B. FASORP Fails To State A Claim Related To Hiring 31

1. FASORP Fails To State A Title VII Claim 31

2. FASORP Fails To State A Section 1981 Claim 34

**Page**


3. FASORP Fails To State A Title VI Claim ................................ 37

II. The District Court Correctly Dismissed FASORP's Law Review Claims ...... 40

A. FASORP Lacks Standing To Challenge The Law Review's Practices........................................................................... 41

1. FASORP Lacks Standing To Challenge Member And Editor Selection ........................................................ 41

2. FASORP Lacks Standing To Challenge Article Selection ......... 46

B. FASORP Fails To State A Claim Related To The Law Review's Practices........................................................................... 49

III. The District Court Correctly Awarded Rule 41(d) Fees ................................ 49

A. The District Court Did Not Clearly Err In Finding That FASORP Acted In Bad Faith ................................................ 49

B. The District Court Did Not Abuse Its Discretion In Awarding Northwestern A Portion Of The Fees It Incurred In Preparing The Rule 41(d) Motion.................................................................. 52

CONCLUSION....................................................................................... 54

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Access Living of Metropolitan Chicago v. Uber Technologies, Inc.*,
958 F.3d 604 (7th Cir. 2020) ........ 19, 28, 32

*Ahern v. Board of Education of the City of Chicago*,
133 F.3d 975 (7th Cir. 1998) ........ 13, 16, 37, 40

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 21, 26, 27, 39, 48

*Association of American Physicians & Surgeons v. United States Food & Drug Administration*,
13 F.4th 531 (6th Cir. 2021) ........ 26

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 26, 39, 40, 45

*Bond v. Stanton*,
630 F.2d 1231 (7th Cir. 1980) ........ 52

*Bruso v. United Airlines, Inc.*,
239 F.3d 848 (7th Cir. 2001) ........ 33, 34

*Burgis v. New York City Department of Sanitation*,
798 F.3d 63 (2d Cir. 2015) ........ 46

*Carello v. Aurora Policemen Credit Union*,
930 F.3d 830 (7th Cir. 2019) ........ 22

*Carney v. Adams*,
592 U.S. 53 (2020) ........ 18

*Caulfield v. Board of Education of the City of New York*,
632 F.2d 999 (2d Cir. 1980) ........ 40

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........ 28, 48

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ........ *passim*

**Page(s)**

*Comcast Corp. v. National Association of African American-Owned Media*,
589 U.S. 327 (2020) .................................................................. 13, 34, 36, 38

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................ 26

*Doe v. New York University*,
2024 WL 2847368 (S.D.N.Y. May 30, 2024) ..................................................... 6, 45

*Donelson v. Hardy*,
931 F.3d 565 (7th Cir. 2019) ........................................................................... 50

*Dunnet Bay Construction Co. v. Borggren*,
799 F.3d 676 (7th Cir. 2015) ............................................................... 18, 19, 26

*Earle Asphalt Co. v. County of Camden*,
2023 WL 8711815 (3d Cir. Dec. 18, 2023) ............................................................ 18

*Edmonson v. Leesville Concrete Co.*,
500 U.S. 614 (1991) ................................................................................... 43, 44

*Ellison v. American Board of Orthopaedic Surgery*,
11 F.4th 200 (3d Cir. 2021) ........................................................................ 18, 21

*Embrey v. St. Charles Trading*,
2025 WL 4084105 (N.D. Ill. Jan. 30, 2025) .......................................................... 52

*Esposito v. Piatrowski*,
223 F.3d 497 (7th Cir. 2000) ............................................................................ 52

*Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*,
28 F.3d 1268 (D.C. Cir. 1994) ..................................................................... 28, 32

*Farm Labor Organization Committee v. Stein*,
56 F.4th 339 (4th Cir. 2022) .............................................................................. 36

*FASORP v. Harvard Law Review Association*,
2019 WL 3754023 (D. Mass. Aug. 8, 2019) ................................................ 7, 19, 41

*FASORP v. New York University Law Review*,
2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020), *aff'd*, 11 F.4th 68 (2d Cir. 2021) ........................................................................... 6, 40, 41, 42

**Page(s)**

*FASORP v. New York University*,
11 F.4th 68 (2d Cir. 2021) .................................................................. 19, 41, 43

*Food & Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ..................................................................................... 17, 30

*Fox v. Vice*,
563 U.S. 826 (2011) ............................................................................................ 53

*Freedom from Religion Foundation, Inc. v. Lew*,
773 F.3d 815 (7th Cir. 2014) .............................................................................. 17

*Gil v. Reed*,
381 F.3d 649 (7th Cir. 2004) .............................................................................. 21

*Golant v. Levy (In re Golant)*,
239 F.3d 931 (7th Cir. 2001) ........................................................................ 50, 51

*Gracia v. Sigmatron International, Inc.*,
986 F.3d 1058 (7th Cir. 2021) ............................................................................ 32

*Gratz v. Bollinger*,
539 U.S. 244 (2003) ............................................................................................ 35

*Grutter v. Bollinger*,
539 U.S. 306 (2003) ............................................................................................ 35

*Hawse v. Page*,
7 F.4th 685 (8th Cir. 2021)................................................................................. 26

*Hummel v. St. Joseph County Board of Commissioners*,
817 F.3d 1010 (7th Cir. 2016) ............................................................................ 21

*Jauquet v. Green Bay Area Catholic Education, Inc.*,
996 F.3d 802 (7th Cir. 2021) .............................................................................. 49

*Johnson v. Transportation Agency, Santa Clara County*,
480 U.S. 616 (1987) ............................................................................................ 37

*Jones Group, Ltd. v. Medline Industries, Inc.*,
435 F.3d 717 (7th Cir. 2006) .............................................................................. 54

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ............................................................................................ 41

**Page(s)**

*L.P. ex rel. Patterson v. Marian Catholic High School*,
852 F.3d 690 (7th Cir. 2017) .......... 49

*Lewis v. Indiana Wesleyan University*,
36 F.4th 755 (7th Cir. 2022) .......... 34

*Lowery v. Texas A&M University*,
2024 WL 4614714 (5th Cir. Oct. 30, 2024) .......... 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 26

*Mach v. Will County Sheriff*,
580 F.3d 495 (7th Cir. 2009) .......... 49, 51

*Medical Assurance Co. v. Hellman*,
610 F.3d 371 (7th Cir. 2010) .......... 36

*Meyerson v. Arizona*,
709 F.2d 1235 (9th Cir. 1983), *vacated on other grounds*, 465 U.S. 1095 (1984) .......... 38, 39

*Miao v. United Airlines, Inc.*,
164 F.4th 622 (7th Cir. 2026) .......... 49

*Michigan v. United States Army Corps of Engineers*,
667 F.3d 765 (7th Cir. 2011) .......... 31

*Moore ex rel. Estate of Grady v. Tuelja*,
546 F.3d 423 (7th Cir. 2008) .......... 53

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) .......... 15, 31, 32

*New Louisiana Holdings, LLC v. Arrowsmith*,
2012 WL 6061710 (N.D. Ill. Dec. 4, 2012) .......... 52

*Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*,
508 U.S. 656 (1993) .......... 19

*Plummer v. American Institute of Certified Public Accountants*,
97 F.3d 220 (7th Cir. 1996) .......... 36

**Page(s)**


*Powers v. Ohio*,
499 U.S. 400 (1991) .................................................................. 42, 43, 44

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
2 F.4th 1002 (7th Cir. 2021)......................................................................... 1, 18

*Reynolds v. School District No. 1*,
69 F.3d 1523 (10th Cir. 1995) ........................................................................ 37

*Roberts v. Progressive Preferred Insurance Co.*,
167 F.4th 955 (6th Cir. 2026)........................................................................... 24

*Salmeron v. Enterprise Recovery Systems, Inc.*,
579 F.3d 787 (7th Cir. 2009) ........................................................................... 50

*Sanderson v. Spectrum Labs, Inc.*,
248 F.3d 1159, 2000 WL 1909678 (7th Cir. 2000).............................................. 49

*Satanic Temple, Inc. v. Rokita*,
163 F.4th 1061 (7th Cir. 2026)..................................................................... 2, 17

*Schirmer v. Nagode*,
621 F.3d 581 (7th Cir. 2010) .................................................................. 19, 28, 48

*Scott v. Pasadena Unified School District*,
306 F.3d 646 (9th Cir. 2002) ........................................................................... 27

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................... 1, 18

*Stringel v. Methodist Hospital of Indiana, Inc.*,
89 F.3d 415 (7th Cir. 1996) ............................................................................ 53

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
600 U.S. 181 (2023) ...................................................................................... 45

*In re TCI Ltd.*,
769 F.2d 441 (7th Cir. 1985) ........................................................................... 51

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................................... 42

*Vang v. State Farm Mutual Automobile Insurance Co.*,
2021 WL 5761002 (C.D. Ill. Dec. 3, 2021)......................................................... 36

**Page(s)**

*Waid v. Merrill Area Public Schools*,
91 F.3d 857 (7th Cir. 1996) .......... 13

*Wallace v. McGlothan*,
606 F.3d 410 (7th Cir. 2010) .......... 53

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) .......... 20

*Wolf v. Kennelly*,
574 F.3d 406 (7th Cir. 2009) .......... 49

*Wooden v. Board of Regents of the University System of Georgia*,
247 F.3d 1262 (11th Cir. 2001) .......... 24

*Worth v. Jackson*,
451 F.3d 854 (D.C. Cir. 2006) .......... 19

**STATUTES**

20 U.S.C. § 951 .......... 39

20 U.S.C. § 951(c)(7) .......... 38

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1343 .......... 1

28 U.S.C. § 1927 .......... 54

42 U.S.C. § 282(b)(7) .......... 39

42 U.S.C. § 282(b)(7)(A) .......... 38

42 U.S.C. § 1862(a)(5) .......... 38

42 U.S.C. § 1862(c) .......... 38

42 U.S.C. § 1862a(a) .......... 38, 39

42 U.S.C. § 2000e-2(a)(1) .......... 32, 33

**Page(s)**

## OTHER AUTHORITIES

Fed. R. Civ. P. 11(b)(1) ........ 53

Fed. R. Civ. P. 11(c) ........ 53

Fed. R. Civ. P. 41(d) ........ 52

Caroline G. Hennigan & Bradford D. Kimball, *HLS Dean of Students Condemns 'Disturbing' Mass Emails Sent to Students After Law Review Controversy*, Harvard Crimson (Apr. 28, 2025), https://www.thecrimson.com/article/2025/4/28/hls-dos-condemns-emails ........ 6

Chris Williams, *Cringe Reverse Discrimination Group Hijacks Michigan Law Listserv To Ask Students To Sprinkle A Little Fraud In Their Personal Statements*, Above the Law (Apr. 28, 2025), https://abovethelaw.com/2025/04/cringe-reverse-discrimination-group-hijacks-michigan-law-listserv-to-ask-students-to-sprinkle-a-little-fraud-in-their-personal-statements/ ........ 6

Chris Williams, *Totally Serious And Not Made-Up Group Hijacks Michigan Law Listserv To 'Preserve Evidence' and Expose 'Unworthy' Students*, Above the Law (Apr. 1, 2025), https://abovethelaw.com/2025/04/totally-serious-and-not-made-up-group-hijacks-michigan-law-listserv-to-preserve-evidence-and-expose-unworthy-students/2 ........ 5

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Faculty, Alumni, and Students Opposed to Racial Preferences' (FASORP) jurisdictional statement, FASORP Brief ("Br.") 1, is not complete and correct.

FASORP appeals from the District Court's February 13, 2026 order entering final judgment. Appendix ("App.") 3, ECF 23.[1] FASORP timely filed its notice of appeal on February 14, 2026. App.1.

FASORP's complaint invoked the District Court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. App.84. But the District Court lacked subject matter jurisdiction because FASORP lacks standing. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). FASORP asserts it has "organizational standing to sue any university that refuses to adopt colorblind and sex-neutral faculty-hiring practices" and Law Review member, editor, and article selection practices. App.84, 131-133 (¶¶ 117-122). Because FASORP has not adequately alleged that at least one of its members has suffered or imminently will suffer an injury in fact, it has not alleged standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *infra* at 17-30, 41-48.

This Court has appellate jurisdiction under 28 U.S.C. § 1291, as this appeal is from a final judgment of the District Court. App.1. But this Court lacks subject

[1] "ECF" refers to documents filed in this appeal. "Dkt." refers to documents filed in No. 1:25-cv-1129 (N.D. Ill.).

matter jurisdiction because FASORP has not alleged standing. *See infra* at 17-30, 41-48.

## STATEMENT OF THE ISSUES

I. Whether the District Court correctly dismissed this suit for lack of Article III standing and failure to state a claim.

II. Whether the District Court correctly ordered FASORP under Rule 41(d) to pay certain of Northwestern's fees for FASORP's bad-faith dismissal and refiling of its suit.

## INTRODUCTION

Federal courts "are empowered to 'resolve only "a real controversy with real impact on real persons."'" *Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1067 (7th Cir. 2026) (citation omitted). This case—filed by a made-for-litigation organization on behalf of three anonymous individuals with no personal stake in its resolution—is not that.

FASORP is a membership organization with no publicly identified members that was founded for the sole purpose of launching a vexatious campaign against purported "leftist ideologues" at universities for "hiring women and racial minorities" who, FASORP believes, are less qualified than straight white men. App.83. As part of this campaign, FASORP has sent harassing emails to, and filed baseless suits against, universities, faculty, and even students, with the express goal of bullying them into selecting fewer "women, racial minorities, homosexuals, and transgender people." App.119-120 (¶¶82-85). Those efforts have proven unsuccessful. Courts

across the country have rightly dismissed each of FASORP's prior lawsuits on numerous grounds, including lack of Article III standing.

This case follows the same pattern. FASORP sued Northwestern University, several faculty, and even two of the Northwestern Law Review's student members, on behalf of three anonymous law professors who currently teach at other universities, claiming that Northwestern discriminates against straight white men in hiring law faculty, selecting Law Review members, and publishing academic articles. But FASORP does not identify a single member who has been, or is likely to be, harmed. And its complaint hinges on a patchwork of conclusory allegations and insidious stereotypes that fail to state any claim for relief.

As to faculty hiring, only two of FASORP's professor members allegedly plan to "apply" to Northwestern, and those plans consist solely of telling a Northwestern faculty member that they are interested in a lateral position. That is leagues away from pleading facts showing that discriminatory treatment is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Indeed, FASORP fails to plead that Northwestern's law faculty appointments committee will ever even see its members' applications, let alone that discrimination against them is "certainly impending." And, regardless, FASORP's claims also fail on the merits for a host of reasons, including that it fails to allege a policy or widespread practice of discrimination as required by Title VII and Section 1981, or facts sufficient to overcome the limitations on employment claims imposed by Title VI.

FASORP's complaints against the Law Review are just as groundless. FASORP does not allege that it has any student members who plan to apply for the Law Review. Instead, FASORP contends that it can challenge the Law Review's member-and-editor selection process on behalf of its three professor members because the female and minority students selected by that process have "lower academic credentials and abilities" and are "more likely to discriminate against articles written by white, heterosexual men." App.132 (¶118). In other words, FASORP's contention is that women and minorities on the Law Review necessarily are less capable and necessarily harbor discriminatory animus against white men. That argument turns on baseless and pernicious stereotypes and has never been accepted by any court (at least in the modern era). In any event, FASORP does not allege any facts that suggest the Law Review has a policy or consistent practice of discriminating against white male applicants or authors, as is required for standing to seek injunctive relief. Indeed, FASORP admits the Law Review has the opposite: a *non*discrimination policy.

This Court should also affirm the modest fee award the District Court imposed under Rule 41(d) in response to FASORP's abusive and dilatory litigation tactics. FASORP does not seriously challenge the factual determination that it acted in bad faith, and its only ground for disturbing the award is a strained procedural argument that it failed to assert below. FASORP's objection is both waived and meritless.

Ultimately, the District Court rightly saw FASORP's complaint for what it is: a piece of propaganda brought to hurl biased attacks against women and minorities

in furtherance of a policy-driven agenda, not a serious legal document grounded in a real case or controversy. The District Court's sound decision should be affirmed.

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

#### A. FASORP And Its History of Unsuccessful, Harassing Litigation

FASORP is a made-for-litigation organization that has never brought a meritorious case. Although FASORP styles itself as a "membership organization," App.84 (¶3), it has no publicly identified members. It was created solely to sue the nation's premier law schools, alleging that "left-wing faculty," administrators, and students are discriminating against straight white men. App.83.

As FASORP's past conduct shows, the goal of these vexatious suits is not to vindicate the rights of FASORP's unnamed members, but to scare law students and law schools into changing their practices in ways the law does not require. For example, in March 2025, FASORP sent a mass email to all University of Michigan law students, threatening that they would "live to regret" any attempt to "use[] their race, sexual proclivities, or gender non-conforming behavior to obtain positions on the Law Review that they did not deserve."[2] The email threatened to "subpoena every personal statement," "expose[]" students as "DEI hire[s] on social media," and "notify future employers" that their "Law Review credential[s] [are] tainted and should be

---

[2] Chris Williams, *Totally Serious And Not Made-Up Group Hijacks Michigan Law Listserv To 'Preserve Evidence' and Expose 'Unworthy' Students*, Above the Law (Apr. 1, 2025), https://abovethelaw.com/2025/04/totally-serious-and-not-made-up-group-hijacks-michigan-law-listserv-to-preserve-evidence-and-expose-unworthy-students/2.

disregarded." *Id.* A few weeks later, FASORP sent another email, encouraging student applicants to the Michigan Law Review to lie about their background, including by "[c]laim[ing]" to be "'African-American' … because homo sapiens originated in Africa," and "[b]egin[ning] the process of gender transitioning" and then "detransition[ing]" later.[3] The same day, FASORP sent similar mass emails to Harvard Law School students, accusing the Harvard Law Review of discriminating against white men and encouraging applicants to claim different racial backgrounds, gender identities, or sexual orientations.[4] The emails were all signed "FASORP" and did not identify who authored or sent them.

Over the last several years, FASORP and its counsel have followed through on their threats, suing Harvard, Michigan, and New York University (NYU). Each lawsuit has failed on the pleadings or been voluntarily dismissed. *See FASORP v. Mich. L. Rev. Ass'n*, No. 25-11837 (E.D. Mich.), Dkt. 13 (voluntarily dismissed); *Doe v. New York Univ. (NYU III)*, 2024 WL 2847368 (S.D.N.Y. May 30, 2024) (dismissed for lack of standing and failure to state a claim); *FASORP v. N.Y.U. L. Rev.*, 2020 WL 1529311 (S.D.N.Y. Mar. 31, 2020) (*NYU I*) (same), *aff'd*, 11 F.4th 68 (2d Cir. 2021)

---

[3] Chris Williams, *Cringe Reverse Discrimination Group Hijacks Michigan Law Listserv To Ask Students To Sprinkle A Little Fraud In Their Personal Statements*, Above the Law (Apr. 28, 2025), https://abovethelaw.com/2025/04/cringe-reverse-discrimination-group-hijacks-michigan-law-listserv-to-ask-students-to-sprinkle-a-little-fraud-in-their-personal-statements/.

[4] Caroline G. Hennigan & Bradford D. Kimball, *HLS Dean of Students Condemns 'Disturbing' Mass Emails Sent to Students After Law Review Controversy*, Harvard Crimson (Apr. 28, 2025), https://www.thecrimson.com/article/2025/4/28/hls-dos-condemns-emails.

(*NYU II*); *FASORP v. Harv. L. Rev. Ass'n*, 2019 WL 3754023 (D. Mass. Aug. 8, 2019) (same).

In this case, FASORP takes aim at Northwestern and its student-edited journal, the Northwestern Law Review. FASORP does not allege that it has any members who are current students, faculty, or alumni of Northwestern. Nor does the complaint identify any FASORP member by name. It instead refers pseudonymously to three members—Individuals A, B, and C—alleging that they are white, heterosexual, cisgender men who currently serve as tenured or tenure-track faculty in unspecified fields at unnamed law schools. App.128-133 (¶¶105-121).

### B. FASORP's Allegations Regarding Faculty Hiring

According to FASORP, Northwestern recruits law faculty on two distinct hiring tracks. App.130-131 (¶¶112-113). Entry-level candidates "submit[] their applications to the Faculty Appointments Register (FAR)." App.130 (¶112). Lateral candidates, who already have faculty appointments at other universities, apply via a multi-step process, where they must first "inform friends or acquaintances on the faculty of their interest" and then "convince" those friends or acquaintances "to convince the appointments committee to recruit" them. App.130-131 (¶113). Because Individuals A, B, and C "currently hold law-school faculty appointments," they can apply "only as lateral candidates." App.130 (¶113).

FASORP asserts that Northwestern "discriminate[s] in favor of black, Hispanic, Asian, female, homosexual, and transgender faculty candidates, and against white men who are heterosexual and non-transgender." App.86 (¶12); *see*

App.97 (¶¶45-46). FASORP bases this assertion on a comparison between the credentials of three white male professors whom Northwestern did not hire with the credentials of five Black professors—four women and one man—who were hired. App.86-97 (¶¶15-44). Those three white male professors are not alleged to be Individuals A, B, and C, or even FASORP members, and FASORP acknowledges they played no "role in initiating this lawsuit." App.87 (¶15 n.1). FASORP further acknowledges that Northwestern interviews and extends offers to white heterosexual men, although it dismisses those offers as largely focused on "tax or empirical" fields for which, FASORP alleges, "it is difficult or impossible to find female or minority scholars." App.98-101 (¶¶47-50).

Regarding its members, FASORP alleges that Individuals A and C have previously informed "at least one person on Northwestern's law faculty of their interest in a lateral faculty appointment" and "intend to continue doing so." App.130-131 (¶113). FASORP alleges only the barest of details as to their qualifications. App.131 (¶¶114, 116). Individual A "is a tenure-track law professor" at one of 198 ABA-accredited law schools, "holds a J.D. and a Ph.D. in political science," and has published "more than 15 scholarly articles" in unnamed publications and "one book." App.128, 131 (¶¶105, 114). The description of Individual C's qualifications is similarly sparse: He is a "tenured" professor at an unnamed law school, has published over 50 articles or book chapters and one book, "has more than 20 years of experience," and once "served as a visiting professor at a top-five law school." App.129, 131 (¶¶109, 116). FASORP does not allege where

Individuals A and C received their law degrees, where they are currently employed, what fields they teach and write in, or whether there is currently demand for scholars in those fields at Northwestern. FASORP also does not allege there was or will be any open position at Northwestern for which Individuals A and C are qualified, have registered interest, or have made any effort to have their faculty contact put them up for.

As for Individual B, FASORP does not allege that he has any plans to apply for a faculty position at Northwestern. App.131 (¶113).

### C. FASORP's Allegations Regarding Member, Editor, and Article Selection At The Law Review

FASORP also targeted the Law Review and its student members. FASORP does not allege that any of its members are Northwestern law students. Instead, FASORP alleges that Individuals A, B, and C will be indirectly harmed because (1) the Law Review's "student editors" rely on "discriminatory preferences" when "selecting their members and editors," App.118 (¶81), and (2) "women, racial minorities, homosexuals, and transgender people" selected for the Law Review supposedly have "lower academic credentials and abilities" and are "more likely to discriminate against articles written by white, heterosexual men" like Individuals A, B and C. App.118, 132 (¶¶81, 118).

FASORP concedes that the Law Review's policy explicitly states it "does not discriminate on the basis of race, ethnicity, religion, socioeconomic background, disability, nationality, sexual orientation, gender orientation and identity, or ideological perspective." App.119 (¶82) (citation omitted). Nevertheless, FASORP

alleges that the Law Review uses applicants' "personal statements" "to discriminate against white men and in favor of women, racial minorities, homosexuals, and transgender people." App.119-120 (¶¶82-85).

FASORP also claims the Law Review discriminates in article selection. App.120-121 (¶86). In support, FASORP alleges only that the Law Review published a single issue several years ago "consist[ing] only of articles written by black women." *Id.* FASORP concedes this issue was not expressly limited to articles written by Black women, and it does not allege Individuals A, B, or C submitted articles for that issue. App.120-121, 131-133 (¶¶86, 117, 119-121). Instead, it claims such an issue could only have been the product of discrimination. App.120-121 (¶86).

FASORP alleges that "the use of race and sex preferences" on the Law Review will harm Individuals A, B, and C because they will face discrimination when they submit articles in the future. App.131-133 (¶¶117-121). But FASORP implicitly concedes that at least one of Individual B's previous submissions was accepted. App.132 (¶120) (alleging "the vast majority" were rejected).

## II. PROCEDURAL BACKGROUND

### A. FASORP's Bad Faith Procedural Maneuver

FASORP first sued Northwestern[5] in July 2024, bringing claims under Title VI, Title IX, and Section 1981. *See* No. 24-cv-5558 (N.D. Ill.). In December 2024, over

---

[5] In the District Court, FASORP sued several faculty members and student members of the Law Review, but later agreed to the dismissal of the claims against those defendants. App.34. FASORP has not appealed that dismissal. Accordingly, this Court granted Northwestern's unopposed motion to correct the caption to remove the individual defendants. ECF No. 26 at 1.

five months after filing suit and after the parties had nearly concluded two rounds of motion-to-dismiss briefing, FASORP filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). App.185-189. Upon receiving a right-to-sue letter from the EEOC, FASORP sought to amend its complaint a second time to add a Title VII claim. Dkt. 43, No. 24-cv-5558.

Northwestern opposed the amendment due to FASORP's inexplicable delay in seeking a right-to-sue letter. Dkt. 47 at 1, No. 24-cv-5558. Northwestern noted that the only explanation FASORP offered for the delay was the supposed "technological difficulties" its experienced counsel encountered "in accessing the EEOC's website—a website that tens of thousands of *pro se* parties successfully navigate each year." *Id.*; *see* App.193-194 (FASORP's counsel reiterating this explanation). The District Court informed the parties it was "inclined to just let [FASORP] amend and move forward," App.195-196, but scheduled an in-person motion hearing, App.182-183.

Three business days before the hearing, FASORP abruptly dismissed its case and filed a new lawsuit (the 2025 case), reasserting the same claims and adding a Title VII claim. App.165; *see* App.83-163. FASORP's counsel represented that the dismissal and refiling "spare[d] both sides the time and expense of traveling to an in-person hearing in Chicago and preparing for and attending that hearing." App.60 (¶5). Avoiding the hearing, counsel explained, also served his personal interest in not traveling unless he "absolutely ha[s] to," such as for "oral argument[s] at the U.S. Supreme Court." App.61-62 (¶¶7-8). At no point prior to this maneuver did FASORP's counsel consult with Northwestern or ask the District Court to hold a

remote hearing. To the contrary, when asked at a prior telephonic hearing whether an "in person" hearing "work[ed] for everybody," FASORP's counsel responded: "Yes, Your Honor." App.182-183.

### B. Orders On Appeal

In the 2025 case, Northwestern once again moved to dismiss the complaint and filed a motion for fees under Rule 41(d), contending that FASORP's dismiss-and-refile maneuver was in bad faith and had prejudiced Northwestern. The District Court granted both motions.

As for the fee motion, the District Court awarded Northwestern $60,000 to partially reimburse the cost of preparing the Rule 41(d) motion due to FASORP's bad-faith conduct. App.36, 44. Specifically, the court found that "FASORP's unilateral action needlessly delayed the case," "inflicted additional costs on Defendants," and required "the Court to devote additional time to resolution of the Rule 41(d) issue." App.43-44.

The District Court then dismissed FASORP's complaint. With respect to FASORP's hiring claims, the court held that FASORP lacked standing to challenge the entry-level hiring process because none of its identified members were "even eligible to apply as [an] entry level applicant[]." App.22. The court next held that while FASORP had sufficiently pleaded standing for "two of its members, Individuals A and C," to challenge Northwestern's lateral hiring process, it failed to state a claim for relief. App.19, 28-34. The court explained that FASORP could not allege "an ongoing and future violation of Title VII" because it had pleaded only an abstract

grievance without showing any "harm respecting an identifiable term or condition of employment." App.31-32 (citations omitted). The court dismissed FASORP's Section 1981 claim for the same reason, as well as because it failed to plead that, "but for race, it would not have suffered the loss of a legally protected right." App.33 (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)).

The District Court next held that FASORP failed to state a Title VI claim. As the court explained, Title VI does not "provide a judicial remedy for employment discrimination" unless "(1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." App.28 (quoting *Ahern v. Bd. of Educ. of the City of Chi.*, 133 F.3d 975, 978 (7th Cir. 1998)). And the court held that neither exception applied here. *See* App.28-30. Finally, because Title IX cannot be used to litigate employment claims if Title VII provides an equivalent remedy, *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 861-63 (7th Cir. 1996), the District Court dismissed the Title IX claim, App.31.

As for FASORP's claims regarding the Law Review, the District Court again held that FASORP lacked standing because its members did not face any certainly impending injury. App.22-27. The Court could not "plausibly infer" discrimination in member and editor selection from FASORP's conclusory allegations. App.24. Even if it could, FASORP's fears that "students whose membership on the law review is attributable to race and sex preferences are more likely to discriminate against articles written by" white men amounted to mere "speculation." *Id.* (emphasis and

citations omitted). The District Court also rejected FASORP's claim that Individuals A, B, and C would suffer an "injury in fact" from "hav[ing] their submissions judged by less qualified members and editors" because "'there is no legally protected interest in having one's academic work evaluated by the most "capable" students.'" App.25 (citation omitted).

The District Court dismissed FASORP's complaint without prejudice. App.35. Rather than amend, FASORP opted to appeal. *See* Dkt. 53; App.1.

## SUMMARY OF ARGUMENT

**I.** The District Court correctly dismissed FASORP's faculty hiring claims.

FASORP fails to allege Article III standing to challenge Northwestern's entry-level or lateral hiring. As for the former, FASORP does not even allege it has a member eligible to apply through the entry-level process. And while FASORP at least has members eligible for lateral hiring, it does not come close to alleging any of them faces a "certainly impending" risk of discrimination. *Clapper*, 568 U.S. at 410. FASORP's sole basis for standing is its allegation that Individuals A and C plan to inform a friend on the Northwestern faculty of their interest in a lateral position. Yet FASORP does not allege that they are likely to "convince [those faculty] intermediaries to convince the appointments committee to recruit [them]." App.130-131 (¶113). There is thus no basis to infer any allegedly discriminatory decision-maker would even *know* about Individual A's and C's interest. And even if this Court assumes as much, FASORP has not alleged that Northwestern has or will have an open position in Individual A's or C's fields of study that they are qualified to fill. Allowing FASORP to sue on that flimsy basis would open the courthouse doors to any

litigant who has expressed a general interest in being employed at a particular institution.

Even setting aside those flaws, FASORP lacks standing because it has not plausibly alleged a policy or practice of discrimination. FASORP has not plausibly alleged an official policy of discrimination. And its cobbled-together anecdotes do not come close to establishing that discrimination is so widespread as to make discrimination against Individuals A and C certainly impending (if they ever were to progress their applications to the relevant stage). On the contrary, FASORP admits that many white male professors were interviewed and hired by Northwestern, including in tax and empirical fields. Especially given that FASORP does not even allege Individual A's and C's fields of study, FASORP has not plausibly alleged an imminent risk of discrimination.

In any event, even if FASORP had standing, the District Court correctly dismissed its hiring claims for failure to state a claim. FASORP's Title VII claim fails because it has not alleged its members will face "some harm respecting an identifiable term or condition of employment." App.32 (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024)). A plaintiff prospectively challenging a hiring process must allege that he will face harm through that process—for instance, that he will be denied an interview or a job based on a protected characteristic. FASORP has not alleged as much. FASORP's Section 1981 claim fails for the same reason, and also because it has not alleged the required element of but-for causation.

FASORP's Title VI claim fails because it has not adequately alleged that "providing employment is a primary objective of the federal aid" received by Northwestern or that discrimination against Northwestern faculty "necessarily causes discrimination against the primary beneficiaries of the federal aid." *Ahern*, 133 F.3d at 978 (citation omitted). And Congress has permitted employment discrimination claims under Title VI only if one of those two conditions is satisfied.

**II.** The District Court likewise correctly dismissed FASORP's Law Review claims for lack of standing. Those claims rely on the bizarre, convoluted, and stereotype-infused notion that the Law Review's failure to select a sufficient number of white male students will harm Individuals A, B, and C because the non-white, non-male students selected will necessarily be less qualified and discriminate against white male professors. That theory is as nonsensical—and offensive—as it sounds.

FASORP also does not state any claim for relief under Section 1981, Title VI, or Title IX. Each statute requires FASORP to plausibly allege that the Law Review discriminates, and FASORP has failed to do so.

**III.** Finally, the District Court did not abuse its discretion in ordering FASORP to pay certain of Northwestern's fees under Rule 41(d). FASORP has no serious response to the court's factual determination that it acted in bad faith. Instead, it argues the court chose the wrong procedural rule under which to award fees. FASORP did not raise that argument below, so it is waived. And even if plain error were applicable in civil cases, FASORP cannot satisfy that standard because

the District Court could have ordered the same fees under Rule 11, Section 1927, or its inherent authority.

## ARGUMENT

### I. The District Court Correctly Dismissed FASORP's Hiring Claims

#### A. FASORP Lacks Standing To Challenge Northwestern's Hiring

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1066 (7th Cir. 2026) (citation omitted). Article III's case or controversy requirement "is not merely a troublesome hurdle to be overcome [by] a party [who] desires to have [their lawsuit] adjudicated; it is a part of the basic charter promulgated by the Framers." *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 825 (7th Cir. 2014) (citation omitted).

The requirement that a plaintiff have standing—a "'personal stake'" in the dispute—helps ensure "courts do not opine on legal issues in response to citizens who might 'roam the country in search of … wrongdoing.'" *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (citations omitted). "Standing also 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" *Id.* (citation omitted). As in every case it has brought, FASORP asserts no concrete controversy, but rather "roam[s] the country" seeking to change policies to which it is ideologically opposed. *Id.* (citation omitted).

To plead associational standing, FASORP must plausibly allege, among other things, that "at least one of its members would 'have standing to sue in their own right.'" *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (citation omitted). That means FASORP must plausibly allege that at least one member (1) has suffered or imminently will suffer "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where, as here, the plaintiff alleges only a "threatened," future injury, that injury "must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (citation omitted).

In the context of an application process, this imminence requirement first demands facts showing the plaintiff is "able and ready" to apply. *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 688-96 (7th Cir. 2015); *see Carney v. Adams*, 592 U.S. 53, 60-61 (2020). "Whether a party is 'able and ready' is a legal conclusion that depends on the facts," *Earle Asphalt Co. v. County of Camden*, 2023 WL 8711815, at *1 (3d Cir. Dec. 18, 2023), so a party must allege facts showing he is qualified for an open position and has taken steps toward applying. *Cf. Carney*, 592 U.S. at 60-61 (assertion that plaintiff "wants to be, and would apply to be," a judge was insufficient absent facts showing efforts to realize that desire). "This requirement" serves as a critical safeguard against "purely hypothetical" lawsuits. *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 206 (3d Cir. 2021).

Even if a plaintiff is ready and able to apply, discrimination is not certainly impending unless the plaintiff can identify a "discriminatory policy" or persistent pattern of discrimination that "'prevents [them] from [competing for a position] on an equal basis.'" *Dunnet Bay*, 799 F.3d at 690 (citation omitted); *Schirmer v. Nagode*, 621 F.3d 581, 588 (7th Cir. 2010) ("persistent pattern" of misconduct may establish standing). A plaintiff whose claim rests "on speculation, untethered to any written directive, about how [a defendant] is likely to make future employment decisions" cannot establish an imminent risk they will be discriminated against in any future application. *Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006); *see Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 613-16 (7th Cir. 2020) (recognizing higher bar when alleged discrimination depends on "individualized" facts, rather than a "categorical" policy).

In short, injury is "certainly impending," *Clapper*, 568 U.S. at 410, only when a plaintiff can show *both* that he is ready and able to apply for an open position he is qualified for *and* that there is a policy or practice of discrimination so widespread that he faces an imminent risk of being subject to discrimination if he applied. *See Dunnet Bay*, 799 F.3d at 690; *see also Ne. Fla. Ch. of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Relying on these principles and precedents, courts across the country have uniformly rejected FASORP's hiring challenges for lack of standing. *See NYU II*, 11 F.4th at 76-77; *Harv. L. Rev.*, 2019 WL 3754023, at *7; *see Lowery v. Texas A&M Univ.*, 2024 WL 4614714, at *1 (5th Cir.

Oct. 30, 2024) (per curiam) (suit brought by FASORP's lead counsel here). This Court should do the same.[6]

### 1. FASORP Lacks Standing To Challenge Entry-Level Hiring

The District Court correctly concluded that FASORP lacks standing to challenge Northwestern's entry-level hiring. App.21-22. FASORP's "complaint is clear" that entry-level and lateral hiring are "distinct processes." App.22; *see* App.130-131 (¶¶112-113). FASORP "admits that Individuals A, B, and C are not even eligible to apply as entry-level applicants," as they already hold tenured or tenure-track positions at other law schools. App.22; *see* Br.7. FASORP thus "fails to identify any member who is ready and able to apply for an entry-level faculty position," App.22, and cannot claim any risk of future injury from discrimination in the entry-level hiring process.

FASORP does not dispute any of this. Instead, it argues for the first time on appeal that a "tenure or tenure-track faculty line can be filled by either an entry-level or a lateral faculty candidate," so any alleged discrimination in entry-level hiring "increas[es] the likelihood" the position "will be filled by an entry-level diversity hire rather than a FASORP member seeking a lateral appointment." Br.5, 7. In other words, FASORP argues entry-level and lateral hires compete for the same spots. That argument fails several times over.

---

[6] FASORP does not appeal the District Court's holding that it lacks standing to challenge Northwestern's promotion, retention, and compensation policies. App.27. Any argument to the contrary is forfeited. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived.").

First, FASORP did not make this argument in the District Court, so it is forfeited. *See Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1021 (7th Cir. 2016) ("[P]laintiffs did not argue this theory of standing in the district court, so it is waived."). While FASORP generally stated that it was "not bringing separate challenges to Northwestern's entry-level and lateral hiring," Dkt. 33 at 8 n.19, at no point did it argue that entry-level and lateral candidates somehow compete for the same jobs, despite being hired through "distinct" processes, App.21-22.

Second, even if FASORP had made that argument below, the complaint alleges no facts to support it. That is not surprising because it flouts common sense. A candidate with "more than 20 years of experience," like Individual C, App.131 (¶116), would not plausibly be considered for an entry-level job. FASORP contends that the District Court was wrong to "assume" faculty positions "are earmarked exclusively for 'entry level' or 'lateral' candidates," Br.8, but the District Court was not required to "check [its] common sense at the door," *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (similar). If FASORP intends to assert Northwestern operates in a way that defies ordinary experience, it must, at a minimum, plead such facts in its complaint. This Court should not find standing based on facts FASORP "did not actually plead." *Ellison*, 11 F.4th at 209.

Finally, even if the Court were to credit FASORP's belated and implausible assertions, the complaint is clear that the "formalized process" for hiring entry-level candidates is different from the informal process for hiring laterals. App.130-131 (¶113). Individuals A, B, and C are not proper plaintiffs to challenge alleged

discrimination in a process to which they are not subject. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 834 (7th Cir. 2019) (any "dignitary harm stemming from the mere knowledge that discriminatory conduct is occurring" to others "is an abstract stigmatic injury that the plaintiff lacks standing to vindicate" (citation omitted)). For these reasons, the District Court correctly dismissed FASORP's entry-level hiring claims for lack of standing.

#### 2. FASORP Lacks Standing To Challenge Lateral Hiring

FASORP likewise lacks standing to challenge Northwestern's lateral hiring. First, FASORP fails to plausibly allege its members' applications are likely to be considered by any allegedly discriminatory decisionmaker for an open position for which they are qualified. Second, even if FASORP had plausibly alleged as much, it does not plausibly allege a policy or widespread practice of discrimination that is likely to affect its members.

**a.** FASORP's complaint describes a multi-step application process. First, a lateral candidate must "inform friends or acquaintances on the faculty of their interest in seeking a position." App.130-131 (¶113). Second, the candidate must "convince [those] intermediaries to convince the appointments committee to recruit" him. App.131 (¶113). Third, if there is an open position in the candidate's field of study, the appointments committee must invite him to interview for that position. App.97 (¶45). Fourth, the appointments committee must put the candidate up for a faculty vote. *Id.* Fifth, the faculty must vote to hire the candidate. *Id.*

FASORP alleges that two of its members, Individuals A and C, have taken and intend to continue taking the *first* step, but says nothing of the rest. Specifically,

FASORP alleges that "Individuals A and C have already informed at least one person on Northwestern's law faculty of their interest in a lateral faculty appointment, and they intend to continue doing so each year until they receive a faculty appointment." App.130-131 (¶113). But FASORP does not allege that the intermediary has contacted the appointments committee on their behalf or is likely to do so in the future, that they have taken any steps to convince the intermediary to do so, or that they have even identified any open position for which they are qualified. FASORP thus implicitly concedes that Individuals A and C have never put their applications in front of any allegedly discriminatory decision-maker—and have no concrete plan for doing so.

That is fatal to FASORP's standing because the complaint does not allege that any discrimination occurs *until* the appointments committee gets involved. Crucially, FASORP does not allege that faculty intermediaries discriminate when deciding whether to contact the committee about a lateral candidate. Instead, it alleges that "[m]any on Northwestern's faculty" have supported and continue to support hiring "white m[e]n." App.87-88 (¶¶16-19). According to FASORP, discrimination occurs only later—when the committee considers whether to invite the candidate for an "interview[]" or "advance" the candidate "to the faculty for a vote," and when the committee or law school leadership opposes candidates at that vote. App.88, 97 (¶¶19-20, 45); *see* App.93-94, 97 (¶¶39, 44). Because FASORP has not alleged that any of its members' applications are likely to proceed to those stages, it cannot show an imminent risk of injury.

Suits are routinely dismissed for lack of standing where, as here, the application process has multiple stages and there is no indication that the plaintiff will ever reach the allegedly discriminatory stage(s). In *Wooden v. Board of Regents of the University System of Georgia*, for example, the Eleventh Circuit held that a student who was rejected at the first stage of a university's admission process due to her poor academic record lacked standing to challenge later aspects of the process she alleged were racially discriminatory. 247 F.3d 1262, 1282 (11th Cir. 2001). As the Eleventh Circuit explained, "at the only stage during which Davis's application was considered," "she was plainly on an equal footing with all other applicants, and was deemed unqualified according to entirely race-neutral criteria." *Id.* Davis therefore could not "claim to have suffered any cognizable injury on account of race unless [the Court] were to find that the injury here is exposure to an overall admissions process that includes a race or ethnicity-based component to which the plaintiff herself is not actually subject." *Id.* The Eleventh Circuit found "no support for that strained argument," which would "virtually abolish the injury-in-fact requirement." *Id.*; *see Roberts v. Progressive Preferred Ins. Co.*, 167 F.4th 955, 961-64 (6th Cir. 2026) (same result, where application process had two stages and plaintiff never reached the second, allegedly discriminatory stage).

Moreover, to the extent Individual A's and C's chosen intermediary declines to pass their names on to the appointments committee—say, because the intermediary does not believe they have superior qualifications—that is not an injury traceable to any alleged discrimination by Northwestern. *See Clapper*, 568 U.S. at 414 n.5

(standing cannot be based on "speculation about 'the unfettered choices made by independent actors not before the courts'" (citation omitted)). Perhaps FASORP assumes its chosen intermediary will advocate on Individual A's and C's behalf, but the complaint does not allege as much.

Moreover, although FASORP makes bare-bones allegations regarding Individual A's and C's qualifications, those allegations do not suggest they are so uniquely qualified that the intermediary would necessarily contact the appointments committee on their behalf—much less try to convince the committee to recruit them. App.130-131 (¶¶113-114, 116-117). There are 198 ABA-accredited law schools, and Northwestern is currently ranked ninth. FASORP does not allege where Individuals A and C teach; where they earned their J.D.s (or Ph.D.); what law reviews they published in, how frequently they have been cited, or any other indication of scholarly impact; or whether they have been offered jobs at peer schools. Instead, FASORP focuses heavily on the credentials of non-members like Eugene Volokh and Ernie Young. App.86, 88 (¶¶15, 18). But that only highlights the absence of relevant allegations as to FASORP's actual members—and suggests that FASORP cannot plead anything remotely similar for them.

Finally, even if FASORP had alleged that Individual A's and C's applications were likely to reach the appointments committee, FASORP does not allege that there is likely to be any open position they are qualified to fill. Law schools do not hire just any talented professor; they hire professors to fill the school's needs for teaching and scholarship on particular subjects. Indeed, FASORP's own complaint—which alleges

that Northwestern hires white men to fill spots in "high-demand and low-supply field[s]," like "tax or empirical work"—confirms as much. App.98 (¶47). But FASORP does not say which subjects Individuals A and C teach or which "field[s]" other than "tax or empirical work" are currently in high demand at Northwestern. If Individuals A and C teach in fields that are already well-represented on the Northwestern faculty, the committee may never consider their applications because there will be no need to hire a scholar with their expertise. Any risk of discrimination is thus entirely speculative. *Cf. Dunnet Bay*, 799 F.3d at 692-93 (no standing where Title VII plaintiff could not show that any "additional costs or burdens that it would incur are *because of race*" and not because of the plaintiff company's size).

The District Court acknowledged the complaint suffered from these deficiencies, but nevertheless held FASORP had standing. App.20. The court reasoned that "this granular level of detail is [not] necessary at the pleading stage" because, "'on a motion to dismiss,'" courts "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" App.20 (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). But the Supreme Court "retired" that "old" and "lenient" "pleading test" from *Conley v. Gibson*, 355 U.S. 41, 47 (1957), in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*. *Ass'n of Am. Physicians & Surgeons v. U.S. FDA*, 13 F.4th 531, 543 (6th Cir. 2021); *see Hawse v. Page*, 7 F.4th 685, 689 (8th Cir. 2021). As those cases make clear, a plaintiff must allege "sufficient factual matter" to make their claim "'plausible.'" *Iqbal*, 556 U.S. at 678 (citation omitted). And here, FASORP fails

to allege sufficient factual matter to support its claim of certainly impending discrimination. *See id.* ("Threadbare recitals" supported "by mere conclusory statements, do not suffice.").[7]

Ultimately, FASORP's claim seems to be that so long as Individuals A and C mentioned to a friend on Northwestern's faculty that they had some interest in a lateral position, that is enough to challenge a hiring process they may never be subjected to. That is precisely the sort of speculative injury Article III forbids. Even if FASORP's pleadings had alleged "the hypothetical existence of a racial or gender barrier," FASORP comes nowhere close to "showing" that its members "ha[ve] been, or [are] genuinely threatened with the likelihood of being, subjected to such a barrier." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 657 (9th Cir. 2002).

**b.** Even assuming Individual A's and C's applications are likely to reach the appointments committee *and* Northwestern is likely to have open positions in their fields of study for which they are qualified, FASORP still fails to plead a certainly impending risk of discrimination because it does not plausibly allege Northwestern has a policy or persistent pattern of discrimination likely to impact Individuals A and C. Without such facts, it is pure speculation that they will encounter discrimination.

To adequately plead that future discrimination is certainly impending, a plaintiff must plausibly allege that the defendant either has an announced policy of discrimination or a pattern of discrimination so widespread that it is highly likely to

---

[7] Regardless, as explained below, *infra* at 31-33, the District Court went on to hold that these same deficiencies doomed the complaint on the merits.

apply to her. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983) (standing based on future injury from unlawful chokehold requires allegation that "all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter" or that "the City ordered or authorized police officers to act in such manner" (emphasis omitted)); *Schirmer*, 621 F.3d at 588 ("persistent pattern" of "similar police misconduct" may "[p]erhaps" suffice to establish standing). Conclusory assertions that a defendant's actions reflect "'a pattern, practice and policy of employment discrimination on the basis of race'" are insufficient; rather, a complaint must include facts showing an imminent risk the defendant will "discriminate against the individual plaintiffs in the future." *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1274 (D.C. Cir. 1994) (citation omitted).

Accordingly, "[i]solated" incidents of misconduct untethered to any announced directive cannot suffice. *Schirmer*, 621 F.3d at 588 (citation omitted); *see Lyons*, 461 U.S. at 108 (no standing on basis that "there will be certain instances in which strangleholds will be illegally applied"). That is especially true where, as here, there are counter-examples undermining the premise that discrimination is widespread. After all, if a complaint pleads that only a handful of people have experienced discrimination while others admittedly have not, there is no reason to think that discrimination against the individual plaintiff is "certainly impending." *Clapper*, 568 U.S. at 410; *see Access Living*, 958 F.3d at 613-16 (no standing where "allegations are too reliant on open-ended generalizations or reports from others about [an allegedly

discriminatory practice] rather than on what [a plaintiff] herself has experienced (or is likely to experience) in her own personalized way").

These principles are fatal to standing here. FASORP does not plausibly allege any official policy of discrimination at Northwestern. Instead, its claim of future injury comes down to a series of one-off anecdotes involving three white male professors, none of whom are FASORP members. Those anecdotes are not nearly enough to establish a widespread practice of discriminating against white male applicants generally. And the thrust of FASORP's own allegations undermines any such inference. FASORP admits that, during the relevant time periods, several white men "proceed[ed] to the interview stage" and were offered tenure-track jobs at Northwestern. App.98, 100-101 (¶¶47, 49-50). During the 2021-2022 academic year, for instance, Northwestern made one-third of its total offers to white men. App.100 (¶48). FASORP contends that these interviews and offers do not count because many, though not all, of these scholars focus on "tax or empirical work" and—as FASORP alleges without citation—"it is difficult or impossible to find female or minority scholars" in those fields. App.98 (¶47). FASORP does not plead Individual A's and C's fields of study, and at best, it paints a picture where numerous white male applicants have faced no competitive disadvantage. FASORP thus fails to plausibly allege that Individuals A and C face a certainly impending risk of discrimination.

* * *

At the end of the day, FASORP's alleged injury rests on a highly speculative and implausible chain of inferences. To find standing, the Court must infer numerous

facts not alleged in the complaint, including that: (i) Individuals A and C will convince their chosen intermediary to present their applications to the appointments committee; (ii) there will be an open position in Individual A's or C's undisclosed field(s) of study for which they are qualified; and (iii) Northwestern, which has admittedly interviewed and hired white male scholars, will nevertheless decline to interview or hire Individuals A and C on account of their race or gender, rather than the lack of relevant openings, their lack of qualifications, or other factors.

None of that is certainly impending. Accepting FASORP's view would mean that any professor at any university would have standing to challenge Northwestern's hiring so long as that professor alleged he told a friend at Northwestern that he wanted a job—even if no such job existed, he took no further steps to put his application before any allegedly discriminatory decisionmaker, he was not qualified for any jobs that were open, and he failed to plausibly allege any policy or persistent practice of discrimination likely to impact him. That is a recipe for permitting "the federal courts [to] becom[e] a 'vehicle for the vindication of the value interests'" of those with no personal stake in the process they challenge. *See Alliance for Hippocratic Med.*, 602 U.S. at 382 (citation omitted). This Court should hold FASORP lacks standing for all hiring claims.

### B. FASORP Fails To State A Claim Related To Hiring

Even if FASORP had standing for some or all of its hiring claims, the District Court correctly dismissed those claims—brought under Title VI, Title VII, and Section 1981—for failure to state a claim.[8]

#### 1. FASORP Fails To State A Title VII Claim

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "That language requires" a Title VII plaintiff to show the employer's action "brought about some 'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024).

FASORP sues not to remedy a past "disadvantageous" change to its members' employment terms, but instead for injunctive relief "that will eliminate Northwestern's use of race or sex preferences going forward." Br.16. But seeking a prospective remedy does not relieve a plaintiff from pleading essential elements of their cause of action. To obtain prospective relief, FASORP must plead facts showing that its members *will* suffer a disadvantageous change in employment terms absent an injunction. *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011) (injunction requires "actual," not just likely, success on the merits (citation omitted)). But, as discussed, FASORP does not adequately allege that Northwestern

[8] FASORP does not dispute that the District Court correctly dismissed its Title IX claim. Br.15 n.9; App.31.

will, in the future, take any adverse employment action against its members on the basis of race or sex. It thus fails to state a Title VII claim.

The District Court correctly dismissed FASORP's Title VII claim for this reason, holding that FASORP did not plausibly allege its members will face "some harm respecting an identifiable term or condition of employment." App.32 (quoting *Muldrow*, 601 U.S. at 354-55). And while FASORP alleges its members would "face a competitive disadvantage" in the hiring process, the District Court correctly recognized that it could not allege future discrimination by conclusorily pleading "[t]his alleged disadvantage" without supporting facts. App.32-33 (citation omitted); *see Access Living*, 958 F.3d at 613-15 ("open-ended generalizations" about plaintiffs' risks of encountering disability discrimination do not suffice); *Fair Emp. Council of Greater Wash., Inc.*, 28 F.3d at 1274 (conclusory assertions that defendant's actions reflect "a pattern, practice and policy of employment discrimination" not sufficient (citation omitted)). Whether labeled as a standing defect or a failure to state a claim, it is fatal to FASORP's Title VII claim. *See Gracia v. Sigmatron Int'l, Inc.*, 986 F.3d 1058, 1063 (7th Cir. 2021) (absence of adverse employment action both "doom[s] [plaintiff's] Title VII claim on the merits" and "raise[s] a threshold question of Article III standing").

FASORP urges reversal because, it says, the District Court required FASORP to allege "Northwestern has *already taken* adverse employment actions against FASORP's members." Br.16 (emphasis added). That mischaracterizes the District Court's decision, which explicitly recognized FASORP did not bring a past

"failure-to-hire claim" and instead alleged "'an ongoing *and future* violation of Title VII.'" App.31-32 (emphasis added) (citation omitted). Nor did the District Court require FASORP to show past harm; rather, it simply required FASORP to allege facts plausibly supporting its claim that its members *will* face "some harm respecting an identifiable term or condition of employment." App.32 (citation omitted). FASORP's bare allegations of a discriminatory process—unconnected from any impending adverse employment action against any FASORP member—were rightly deemed insufficient.

Although the District Court labeled this as a merits defect, not a standing one, the result is the same. FASORP's claim fails because it does not allege its members' applications are likely to be considered by any allegedly discriminatory decisionmaker; and even if it had, FASORP does not support with concrete allegations its claim that Northwestern will "fail or refuse to hire" or take any other adverse action against Individuals A or C "because of [their] race, color, [or] sex." 42 U.S.C. § 2000e-2(a)(1).

Tellingly, FASORP does not identify any case supporting its extreme position that it is entitled to have a federal court "oversee all decisions relating to the appointment, promotion, and compensation of faculty" at one of America's foremost educational institutions, App.144 (¶161(j)), based on nothing more than a series of anecdotes, involving none of its members. Indeed, FASORP's citation to *Bruso v. United Airlines, Inc.*, 239 F.3d 848 (7th Cir. 2001), only underscores the deficiencies of its claim. *Bruso* held that a plaintiff who had "persuad[ed] the jury that he was

the victim of a retaliatory demotion" could obtain a tailored injunction preventing further adverse actions against him without showing a "pattern or practice of discrimination" beyond his individual case. *Id.* at 864. But that was because the plaintiff had already established an Article III injury and Title VII violation (retaliatory demotion), which supported his claim that he personally was likely to suffer future harm. *See id.* at 864-65. By contrast, FASORP's members have not suffered any cognizable injury in the past and their allegation that they will face a "competitive disadvantage" in the future—unadorned by any factual allegations plausibly showing they would actually suffer discrimination when applying to an open position they are qualified to fill—is not sufficient.

### 2. FASORP Fails To State A Section 1981 Claim

The District Court correctly dismissed FASORP's Section 1981 claim for the same reasons as the Title VII claim. App.33; *see supra* at 31-34; *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) ("The legal analysis for discrimination claims under Title VII and § 1981 is largely identical").

The District Court also correctly dismissed the Section 1981 claim because FASORP failed to plead but-for causation. App.33-34; *see Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) (Section 1981 plaintiff must "plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). On appeal, FASORP does not dispute it failed to plead but-for causation, instead contending it need not do so because it seeks only forward-looking relief. Br.18-20. As the District Court explained, that argument is "baseless," as "Supreme Court precedent clearly holds that a plaintiff must initially plead but-

for causation to state a Section 1981 claim," and FASORP cites no case to the contrary. App.34.

FASORP's insistence that the but-for causation requirement applies only to retrospective claims for damages, not prospective claims for injunctive relief, is wrong under *Comcast*. *Comcast* contrasted Section 1981's but-for causation test with Title VII's motive test, which *does* draw a distinction based on the remedies a plaintiff seeks. 589 U.S. at 337. Under Title VII, a "lack of but-for causation [is] an affirmative defense" to the backward-looking remedies of "damages and reinstatement," yet a plaintiff may still obtain other forward-looking declaratory and injunctive relief if race was a "motivating factor" in the defendant's decision. *Id.* But, as *Comcast* explained, Title VII's distinction between retrospective and prospective relief has no analog in Section 1981. *Id.* ("While this is all well and good for understanding Title VII, it's hard to see what any of it might tell us about § 1981.").

Ignoring the Supreme Court's recent on-point pronouncement in *Comcast*, FASORP points to statements in *Gratz v. Bollinger*, 539 U.S. 244, 276 & n.23 (2003), and *Grutter v. Bollinger*, 539 U.S. 306, 343 (2003), suggesting that the plaintiffs' Equal Protection Clause, Title VI, and Section 1981 claims there rose and fell together. Br.18. But those cases do not purport to hold that the elements of those claims are identical. Nor could they. No one disputes that Section 1981 requires interference with a contractual relationship, for instance, while Title VI requires the defendant to receive federal funding—elements foreign to the Equal Protection Clause. Instead, *Gratz* and *Grutter* merely recognized that there will often be

significant overlap between these statutory and constitutional mandates. As the District Court correctly explained, neither case addressed whether Section 1981 requires but-for causation—a question the Court later answered in the affirmative in *Comcast*. *See* App.34.

FASORP's contention (at 19) that it "need only satisfy the four-part test for a permanent injunction" is likewise meritless. The first part of that test asks whether the plaintiff "has in fact succeeded on the merits." *Plummer v. Am. Inst. of CPAs*, 97 F.3d 220, 229 (7th Cir. 1996) (emphasis omitted). To succeed on the merits of its Section 1981 claim, FASORP must "plead and ultimately prove" but-for causation. *Comcast*, 589 U.S. at 341. The same is true of the Declaratory Judgment Act, which requires a plaintiff to prove the merits of its claim for declaratory relief under another statute—here, Section 1981. *See Med. Assurance Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010); *contra* Br.19.

It should thus come as no surprise that courts dismiss Section 1981 claims for "fail[ure] to allege but-for causation," even where the plaintiffs seek only a forward-looking "permanent injunction enjoining [the defendant] from 'further violations of law.'" *Vang v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5761002, at *3, *9 (C.D. Ill. Dec. 3, 2021) (citation omitted); *see Farm Lab. Org. Comm. v. Stein*, 56 F.4th 339, 344, 352 n.3 (4th Cir. 2022) (affirming summary judgment in suit seeking only injunctive relief where plaintiff "d[id] not satisfy § 1981's but-for causation requirement"). The District Court was correct to do the same here.

### 3. FASORP Fails To State A Title VI Claim

The District Court also correctly held that FASORP could not state an employment discrimination claim under Title VI. App.28-31.

Enacted pursuant to Congress's Spending Clause powers, Title VI was designed to "assure federal funds would not be used in an improper manner." *Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 627 n.6 (1987) (citation omitted). But Congress understood that Title VI would "'impinge on [T]itle VII'" if it applied to every action by every employer who receives federal financial assistance. *Id.* (alteration in original) (citation omitted). Thus, as this Court held in *Ahern v. Board of Education of the City of Chicago*, employment discrimination claims are not cognizable under Title VI unless "(1) providing employment is a primary objective of the federal aid, or (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." 133 F.3d 975, 978 (7th Cir. 1998) (citation omitted). The District Court correctly held that neither exception applies here.

**a.** As to the first, the District Court correctly recognized that "FASORP has fallen far short of establishing that any of Northwestern's federal funding has a primary objective of providing employment." App.28. The complaint generically alleges that the federal government provides "research grants" to "institutions such as Northwestern" that are "used to employ university faculty on research tasks." App.135 (¶134). But that is insufficient to establish "that employment is the *primary objective* of that funding." App.29 (collecting cases); *see Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995) (that employment position was "paid by a federal

grant" does not mean "the grant was intended primarily to provide employment"). Holding otherwise would "essentially eliminate the 'primary objective' requirement," because "almost all federal assistance results in an increase of at least some employment." *Meyerson v. Arizona*, 709 F.2d 1235, 1237 (9th Cir. 1983), *vacated on other grounds*, 465 U.S. 1095 (1984).

The grant information FASORP attached to its opposition to Northwestern's motion to dismiss only undermines its argument. App.45-53. Those attachments reveal that Northwestern receives funding from the National Science Foundation ("NSF"), National Institutes of Health ("NIH"), and National Endowment of the Humanities ("NEH") to support, for example, research on "Theory and Mathematics in Biology" and courses on "[t]he Ancient Quarrel Between Philosophy and Poetry." App.45, 47-48. But FASORP's excerpted descriptions of these grants do not even reference employment. That is because the statutorily defined purposes of these grant programs are not to boost employment, but to support research, education, and scholarship "essential to our national security, and to our health, economic welfare, and general well-being." 42 U.S.C. § 1862a(a) (NSF); *see id.* § 282(b)(7)(A) (NIH funds research on "emerging scientific opportunities" and "rising public health challenges"); 20 U.S.C. § 951(c)(7) (NEH promotes "[t]he practice of art and the study of the humanities").

FASORP responds (at 26) that Congress authorized the NSF to "employ[]" "consulting services" to evaluate the needs of "various sciences and fields of engineering" and to support "applied scientific research." 42 U.S.C. § 1862(a)(5), (c).

But the fact that Congress authorized an *agency* to employ consulting services does not mean that all grants NSF issues to Northwestern are for the primary purpose of employing professors. And while FASORP asserts that Northwestern cannot initiate agency-funded "programs" or "research" without first employing faculty, Br.27, that "minimal and incidental effect on employment" does not suffice to meet the "primary objective" test, *Meyerson*, 709 F.2d at 1237.

FASORP (at 21-24) also faults the District Court for requiring more than a bare assertion that the "primary objective" of Northwestern's research grants is employment. App.135 (¶134) (citation omitted). But the primary purpose of federal aid is a legal question, not a factual allegation that the court was required to credit on a motion to dismiss. FASORP cannot simply "plead the bare elements of [its] cause of action" and "expect [its] complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687; *see Twombly*, 550 U.S. at 555-56 (similar).

**b.** As to the second *Ahern* exception, FASORP asserts that the challenged discrimination causes harm to Northwestern's faculty, who are the primary beneficiaries of federal aid. Br.27-29. But as the District Court correctly recognized, FASORP has not explained why faculty would be "the primary beneficiaries" of federal grants aimed at promoting national security, public health, economic welfare, and democracy. App.29-30; *see* 42 U.S.C. § 1862a(a) (NSF); *id.* § 282(b)(7) (NIH); 20 U.S.C. § 951 (NEH). Instead, the funding statutes suggest these grants are aimed principally at benefiting the *public*. *See* 42 U.S.C. §§ 1862a(a), 282(b)(7); 20 U.S.C. § 951. And although FASORP reprises its argument that it "need[] only … *allege* that

university faculty are primary beneficiaries of at least some of the federal aid," Br.29, this "formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555.

At bottom, FASORP's argument on the second *Ahern* exception does little more than repackage its failed argument on the first. But the second exception is designed to encompass the unusual cases where retaliation or discrimination against employees results in downstream discrimination against other primary beneficiaries. *See Caulfield v. Bd. of Educ. of N.Y.*, 632 F.2d 999, 1005 (2d Cir. 1980) (discrimination against teachers harms students, the primary beneficiaries). And while FASORP's complaint concedes that "students are the primary beneficiaries" of at least some of the aid, App.134 (¶130), FASORP does not allege that Northwestern's "employment practices" subject students or any other beneficiary to "discrimination." *Ahern*, 133 F.3d at 977.[9]

## II. The District Court Correctly Dismissed FASORP's Law Review Claims

Not content to target just Northwestern and its law faculty, FASORP also zeroes in on the Law Review and its student members. As it has in similar lawsuits against Harvard, NYU, and Michigan, FASORP claims the Law Review discriminates both in its selection of members and editors and its choice of articles. But FASORP has no standing to complain about the Law Review's member and editor selection because it does not have a single student member who plans to apply. FASORP's

---

[9] Even if FASORP had plausibly alleged Title VI covered its employment claims, it does not plausibly allege discrimination. *See supra* at 27-34.

attempt to evade that deficit by denigrating minority students as inherently discriminatory and unqualified to judge good scholarship has been rightfully rejected by every court to consider it. *See NYU I*, 2020 WL 1529311, at *5-6; *NYU II*, 11 F.4th at 76-77; *Harv. L. Rev.*, 2019 WL 3754023, at *7. This Court should do the same. This Court should similarly hold FASORP lacks standing to challenge the Law Review's article selection because FASORP fails to allege any facts supporting a non-speculative inference of discrimination in article selection.

### A. FASORP Lacks Standing To Challenge The Law Review's Practices

#### 1. FASORP Lacks Standing To Challenge Member And Editor Selection

The District Court correctly concluded FASORP lacks standing to challenge the Law Review's member and editor selection. FASORP's claims run headlong into black letter law holding that a party generally "cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted). Although FASORP complains of discrimination against prospective Law Review members, it has not "allege[d] that one or more of its members are students at Northwestern Law who intend to apply for a member or editor position." App.22.

Seeking to evade that fundamental problem, FASORP urges (at 10-15) that Individuals A, B, and C will be harmed by the Law Review's member and editor selection because their article submissions will be "judged by students with lower academic credentials and abilities" and who are "more likely to discriminate against

articles written by white, heterosexual men." App.132 (¶118). Neither establishes standing. App.22-23.

As an initial matter, FASORP's claim (at 22) that its members are injured when "less qualified" students review their submissions rests on the premise—which itself rests on stereotypes laid to rest long ago, or so we all had hoped—that selecting more "women, racial minorities, homosexuals, and transgender people," App.118 (¶81), will "dilute[] the quality of the students who vote on whether to accept manuscripts submitted by FASORP's members," Br.10. Even crediting that foul and unsupported assertion, the District Court correctly held that FASORP cannot establish standing on that basis because "having one's academic work evaluated" by less "capable" students does not constitute an "injury in fact." App.25 (quoting *NYU I*, 2020 WL 1529311, at *5-6). After all, "there is no legally protected interest in having one's academic work evaluated by the most 'capable' students." *Id.* (quoting same). FASORP has not explained how its members will suffer any "concrete harm" with "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

Citing *Powers v. Ohio*, 499 U.S. 400 (1991), FASORP argues that an author whose manuscript is reviewed by students "chosen by diversity criteria" suffers the same injury as a criminal defendant whose case is reviewed by a jury chosen through discrimination. Br.11. *Powers* is inapposite; in recognizing a narrow exception to the general prohibition on third-party standing, the Court reasoned that this was the rare case where a criminal defendant could sue on behalf of someone else. 499 U.S.

at 410; *see Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) (extending *Powers* to civil litigants). As the Court explained, a criminal defendant can assert an excluded juror's rights because he has a close "relation, if not a bond of trust, with the jurors" and "[t]he barriers to a suit by an excluded juror are daunting." 499 U.S. at 413-15. Moreover, "a criminal defendant suffers a real injury when the prosecutor excludes jurors at his or her own trial on account of race." *Id.* at 413. That is because "constitutional violation[s] committed in open court ... cast[] doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law" and create a risk that "[t]he verdict will not be accepted or understood" as one "given in accordance with the law." *Id.* at 412-13; *see Edmonson*, 500 U.S. at 628 (similar).

Forgetting that *Powers* was a case about third-party standing, FASORP makes no assertion that Individuals A, B, and C are well-suited to vindicate the rights of Northwestern's students. Instead, FASORP takes *Powers*' injury analysis out of its context and urges that its members suffer the same harm. Even on that point, *Powers* is inapposite because it "depended on special considerations relating to criminal justice that are inapplicable here." *NYU II*, 11 F.4th at 77; *see* App.25. Discrimination against potential jurors injures a criminal defendant not just because "discriminatory practices" change "the composition of the jury," Br.11, but because it casts doubt on the integrity of the judicial process and "condones violations of the

United States Constitution within the very institution entrusted with its enforcement." 499 U.S. at 411-12. Those concerns are not present here.[10]

FASORP's second claim of injury from the Law Review's member and editor selection process is just as speculative and noxious. That claim rests on the premise "that diversity hires on the law review's editorial board"—that is, women, racial minorities, and LGBTQ students—"are more likely to discriminate against white male authors than editors who earned their law-review positions through merit." Br.13. The idea, it seems, is that white students will favor white authors, Black students will favor Black authors, male students will favor male authors, female students will favor female authors, straight students will favor straight authors, and LGBTQ students will favor LGBTQ authors. Not surprisingly, FASORP alleges no facts to support the insidious race and sex stereotypes undergirding this assertion. Indeed, if credited, that premise would threaten to allow every civil rights litigant to state a claim of discrimination merely by pointing to the race or sex of the relevant decisionmaker, upending antidiscrimination law in the process.

Moreover, even crediting FASORP's premise, FASORP fails to plausibly allege that Individual A, B, or C's submissions are likely to be reviewed by anyone selected by a discriminatory process. FASORP argues that the District Court was required to accept the truth of its allegations that the Law Review "give[s] discriminatory

---

[10] FASORP urges that "these observations go to the merits" and "have nothing to do with" standing. Br.12. But *Powers* and *Edmonson* are clear that threats to the fairness of the proceeding are what allow defendants to establish "concrete, redressable injury." *Edmonson*, 500 U.S. at 615; *see Powers*, 499 U.S. at 411-13.

preferences to women, racial minorities, homosexuals, and transgender people" and "will continue" to do so until a court intervenes. Br.14 (quoting App.118, 120 (¶¶81, 85)). But, again, mere "formulaic recitation[s] of the elements" of a discrimination claim are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. And the supposedly "common knowledge that student-edited law reviews use race and sex preferences to select their members," Br.14-15, cannot substitute for allegations supporting FASORP's claim that the Northwestern Law Review, specifically, engages in such discrimination, especially when FASORP admits the Law Review has a policy expressly prohibiting such discrimination, App.119 (¶82).

FASORP seeks to bolster its bald assertions of discrimination by noting that the Law Review offers students the opportunity to submit "personal statements." Br.14 (quoting App.119 (¶82)). But the Supreme Court has affirmed that universities can, consistent with federal antidiscrimination law, solicit personal essays and "consider[] an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230-31 (2023). The use of personal statements is thus insufficient to infer discrimination. And the bare assertion that the Law Review uses personal statements to "discriminate against white men" is both conclusory and undermined by the Law Review's nondiscrimination policy. *See* App.119 (¶82); *NYU III*, 2024 WL 2847368, at *6.

Ultimately, as the District Court correctly explained, the risk of discrimination against Individuals A, B, and C "amount[s] to nothing more than conjecture about

what *might* happen in the future." App.23. Even taking every inference in FASORP's favor, the alleged threatened injury would occur only if: (1) the Law Review students who vote on the article are students who chose to identify their race, gender, or sexual orientation in their personal statements; (2) those students received preferential treatment as a result; and (3) those students are in fact more likely to reject articles by white, heterosexual authors. That "highly attenuated chain of possibilities" is filled with conclusory links. *Clapper*, 568 U.S. at 410.

### 2. FASORP Lacks Standing To Challenge Article Selection

The District Court likewise correctly held that FASORP lacks standing to challenge the Law Review's article selection because it fails to allege that Individual A, B, or C faces an imminent and non-speculative risk of harm. App.26-27.

As the District Court noted, FASORP's "allegations regarding the article selection process are even more sparse" than those regarding member and editor selection. App.12. FASORP alleges there is a "normal selection process" through which "authors earn[] their placement" in the Law Review "by writing better scholarship" than authors whose pieces are "rejected," App.120-121 (¶86), but "includes no further details regarding this process," App.12.

FASORP also fails to allege any facts supporting a non-speculative "inference of current discrimination" in article selection. App.26. To the contrary, FASORP acknowledges the Law Review has a nondiscrimination policy. App.119 (¶82). And it tacitly admits the Law Review accepted one or more of Individual B's prior submissions, undermining any inference of pervasive discrimination. App.132 (¶120) ("vast majority," but not all, were rejected); *see Burgis v. N.Y.C. Dep't of Sanitation*,

798 F.3d 63, 70 (2d Cir. 2015) (plaintiffs' admission that they had "been promoted at some point" in the past "undermine[d] their allegations of discrimination").

On appeal, FASORP points (at 9) to several allegations that it claims support an inference of discrimination, but all are either conclusory or patently insufficient. FASORP's refrain that the Law Review "give[s] discriminatory preferences to articles written by" certain demographic groups is conclusory and unsupported by specific factual allegations. App.118-120 (¶¶81-82, 86). The same is true for FASORP's unadorned assertion that the Law Review's nondiscrimination policy is "a bald-faced lie." App.119 (¶82). The only even remotely concrete facts FASORP alleges are: (1) the Law Review asks members to sign NDAs; (2) the Law Review has a "senior equity and inclusion editor"; and (3) the Law Review published one issue years ago that "consisted only of articles written by black women." App.120-122 (¶¶84, 86, 88); *see* Br.9. None of those alleged facts support a policy or persistent pattern of discrimination by the Law Review. *See supra* at 27-29.

First, the NDAs do not even cover article selection. The NDA attached to FASORP's complaint defines "Confidential Information" as "the contents of individual student Write-On submissions and GPAs," "procedures for grading Write-On submissions," "Write-On scores," and other information "related to the selection of the … membership." App.161. The obvious purpose is to protect *student* information, not to facilitate discrimination against authors. Indeed, nowhere does the NDA mention article selection or any author information.

Second, FASORP alleges no facts to support its conclusory assertion that the "discriminatory article-selection practices are overseen and egged on by the Law Review's senior equity and inclusion editor." App.128 (¶102). FASORP does not allege, for instance, that this editor selects articles for consideration, votes on articles to be accepted, or has any say at all over what is published. The mere existence of a position entitled "equity and inclusion editor" does not show a policy or widespread pattern of unlawful discrimination.

Finally, the allegation that the Law Review published a single issue with five Black female authors does not suffice to allege a "persistent pattern" of discrimination. *Schirmer*, 621 F.3d at 588. To start, FASORP does not allege the Law Review rejected any otherwise publication-worthy articles by authors of other races or genders; to the contrary, FASORP admits the Law Review did not announce a policy of selecting only articles written by Black women. App.120-121 (¶86). FASORP's shock and disbelief that there could be five Black women who submitted publication-worthy articles to the Law Review does not suffice to state a claim. Indeed, FASORP would not bat an eye at an issue containing articles by five white men—and the existence of such an issue plainly could not "unlock the doors of discovery" into every law school whose law review published such an issue. *Iqbal*, 556 U.S. at 678. And even if this one Law Review issue plausibly suggested discrimination, a single instance of past discrimination would not provide standing to enjoin future activities. *See Lyons*, 461 U.S. at 102-03 (past injury not sufficient for forward-looking relief).

### B. FASORP Fails To State A Claim Related To The Law Review's Practices

For essentially the same reasons, FASORP fails to state any claim as to the Law Review's member, editor, and article selection practices. Section 1981, Title VI, and Title IX claims all require plausible allegations of discrimination. *See Miao v. United Airlines, Inc.*, 164 F.4th 622, 624-26 (7th Cir. 2026) (Section 1981); *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 809-11 (7th Cir. 2021) (Title IX); *L.P. ex rel. Patterson v. Marian Cath. High Sch.*, 852 F.3d 690, 695 (7th Cir. 2017) (Title VI). Because FASORP fails to plausibly allege discrimination, *see supra* at 44-48, it fails to state a claim as to the Law Review's practices.

## III. The District Court Correctly Awarded Rule 41(d) Fees

The District Court did not abuse its discretion in awarding Northwestern Rule 41(d) fees based on FASORP's bad-faith conduct. *See Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159, 2000 WL 1909678, at *5-6 (7th Cir. 2000) (table) (reviewing 41(d) fee award for abuse of discretion). A district court abuses its discretion only if it "bas[es] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Wolf v. Kennelly*, 574 F.3d 406, 410 (7th Cir. 2009) (citation omitted). FASORP shows neither.

### A. The District Court Did Not Clearly Err In Finding That FASORP Acted In Bad Faith

Although "[e]xactly what constitutes bad faith has been the subject of some uncertainty," the term encompasses "harassment, unnecessary delay, [and] needless increase in the cost of litigation." *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009). The District Court concluded that, in seeking at the eleventh hour to avoid

a scheduled hearing on its motion to amend in the 2024 case, FASORP acted in bad faith by "needlessly delay[ing] the case and inflict[ing] additional costs on Defendants." App.43. The court's finding of bad faith is a factual question reviewed deferentially "for clear error." *Golant v. Levy (In re Golant)*, 239 F.3d 931, 936 (7th Cir. 2001); *see Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (same).

The record amply supports the District Court's conclusion. Attempting to avoid a potentially unfavorable ruling and uncomfortable hearing—at which its lead counsel likely would have been questioned about why he was unable to timely file an EEOC complaint on a government website that tens of thousands of non-lawyer claimants manage to navigate annually, why he did not seek assistance from his co-counsel or others when he was unable to do so, and why he waited several months to try again, Dkt. 47 at 1, No. 24-cv-5558—FASORP jettisoned its fully briefed motion to amend, which both Northwestern and the District Court had expended significant time addressing. FASORP's rash move also forced Northwestern to brief a third motion to dismiss, including on a new Title VII claim FASORP had unduly delayed in bringing.

FASORP spills much ink quibbling with the District Court's factual findings, urging that "dismissing and refiling" saved "tens of thousands of dollars in attorneys' fees and travel costs by avoiding the need for an in-person hearing." Br.40; *see* Br.30-34. But this Court can reverse the District Court's findings only if "left with a 'definite and firm conviction that a mistake has been committed.'" *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (citation omitted). And while

FASORP faults the District Court for finding that it "'inflicted additional costs on [Defendants]'" without opining on the precise "costs the parties would have incurred in connection with the" in-person hearing, Br.40, the court did not need to calculate those exact costs to find that FASORP's maneuver cost *more*. This is particularly so given that FASORP easily could have asked the District Court to hold the hearing virtually rather than in-person.

In an effort to conjure a legal error, FASORP misconstrues the District Court's holding as creating a "strict-liability standard," arguing that it found "bad faith based solely on its assessment that dismissal and refiling resulted in 'delay' or 'costs.'" Br.39. But the court did not purport to hold that every action resulting in delay or costs constitutes bad faith. To the contrary, it deduced from "'the conduct of the litigation'" that FASORP's maneuvers were "done in bad faith." App.42-43 (quoting *Mach*, 580 F.3d at 501). That approach aligns with this Court's explanation that "'bad faith' has an objective meaning as well as a subjective one" and "[i]f a lawyer pursues a path that a reasonably careful attorney" would know "to be unsound, the conduct is objectively unreasonable and vexatious." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985).

Nor is there any reason to credit FASORP's claim that the District Court shifted the burden of proof to FASORP to "convince[]" the court its maneuver was not "frivolous, unreasonable, or done in bad faith." Br.36 (quoting App.43). That the District Court described itself as "[un]convinced" by FASORP's rebuttals does not change the fact that it made an independent finding of bad faith. App.43; *cf. In re*

*Golant*, 239 F.3d at 936 (finding of bad faith can be "infer[red]" from sanction order and, "whether implicit or explicit, is reviewed for clear error").

### B. The District Court Did Not Abuse Its Discretion In Awarding Northwestern A Portion Of The Fees It Incurred In Preparing The Rule 41(d) Motion

The District Court did not abuse its discretion in ordering FASORP to reimburse Northwestern for a portion of the fees expended on its Rule 41(d) motion. For the first time on appeal, FASORP contends (at 41-42) that Rule 41(d) allows for costs associated only with "th[e] previous action." Fed. R. Civ. P. 41(d). But the court's fee award aligns with "the purpose of Rule 41(d)," which is to deter exactly the kind of "vexatious litigation" FASORP pursued. *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000). This Court has also made clear that fees incurred in litigating an attorney's entitlement to fees can be compensable. *See Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980); *see, e.g.*, *New La. Holdings, LLC v. Arrowsmith*, 2012 WL 6061710, at *13 (N.D. Ill. Dec. 4, 2012) (awarding fees associated with filing Rule 41(d) motion); *Embrey v. St. Charles Trading*, 2025 WL 4084105, at *1-3 (N.D. Ill. Jan. 30, 2025) (same). And those fees are necessarily not incurred in "th[e] previous action." Fed. R. Civ. P. 41(d).

In any event, FASORP never pressed this novel textual argument below, despite Northwestern having requested "fees for the time spent in preparing, researching, drafting, and filing the Costs Motion." Dkt. 17 at 11 (quoting *Arrowsmith*, 2012 WL 6061710, at *13); *see generally* Dkt. 28. Settled law holds that "[i]ssues and arguments not raised before the district court are deemed forfeited on

appeal." *Wallace v. McGlothan*, 606 F.3d 410, 425-26 (7th Cir. 2010). And while this Court reviews some forfeited arguments for plain error, it generally "do[es] not recognize plain errors in civil cases, unless they affect [the Court's] subject matter jurisdiction" or, in rare cases, relate to "the admission of evidence." *Stringel v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 421 (7th Cir. 1996). This case falls in neither category.

In any event, FASORP cannot meet the plain-error test. To invoke plain-error review, a party must demonstrate, among other things, "a miscarriage of justice will occur if plain error review is not applied." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 430 (7th Cir. 2008). FASORP cannot do so because the District Court could have required FASORP to pay the same fees even apart from Rule 41(d). Northwestern asked the District Court to "exercise its *inherent discretion* to award costs and fees," Dkt. 17 at 11 (emphasis added) (capitalization normalized), and FASORP itself recognizes that courts have "inherent power to sanction abusive and egregious behavior by a litigant by awarding attorneys' fees," Br.36 (citation omitted). The District Court's inherent authority included the power to provide Northwestern with "the portion of [its] fees that [it] would not have paid but for" FASORP's bad-faith conduct—that is, the fees incurred in preparing the Rule 41(d) motion. *Fox v. Vice*, 563 U.S. 826, 836 (2011). Rule 11, too, allows courts to issue sanctions *sua sponte* if an attorney presents a filing for "any improper purpose," including to "cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1), (c); *see* App.43 (finding that FASORP "needlessly delayed the case and

inflicted additional costs"). So does 28 U.S.C. § 1927. *See Jones Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

Thus, even crediting FASORP's assertion that the District Court cited the wrong provision of law, there can be no "miscarriage of justice" where the court could have issued the same award under Rule 11, Section 1927, or its inherent powers. If this Court nevertheless vacates the award, Northwestern requests a remand for the District Court to reconsider whether to issue fees under Rule 11, Section 1927, or its inherent authority.

## CONCLUSION

For the foregoing reasons, this Court should affirm the dismissal of this suit.

Dated: July 1, 2026

Respectfully submitted,

/s/ *Samir Deger-Sen*

Samir Deger-Sen
*Counsel of Record*
Norah Rast*
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
samir.deger-sen@lw.com

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700

Christine C. Smith
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Danielle Conley
Jude Volek
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Suite 700
Washington, DC 20004
(202) 240-2945

**Admitted in Washington DC, only.*

*Counsel for Defendant-Appellee Northwestern University*

## CERTIFICATE OF RULE 32 COMPLIANCE

I hereby certify that this brief conforms to the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c). This brief contains 13,997 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I hereby certify, in accordance with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as amended by Circuit Rule 32(b), that this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

Dated: July 1, 2026

/s/ *Samir Deger-Sen*
Samir Deger-Sen
*Counsel for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I, Samir Deger-Sen, hereby certify that on July 1, 2026, I electronically filed the foregoing Brief of Defendant-Appellee with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, which constitutes service on all counsel of record, registered filing users, pursuant to Federal Rule of Appellate Procedure 25(c)(2) and Circuit Rule 25(a).

/s/ *Samir Deger-Sen*
Samir Deger-Sen
*Counsel for Defendant-Appellee*